UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
ASCENT: A SCHOOL FOR INDIVIDUALS WITH AUTISM,
NASSAU SUFFOLK SERVICES FOR THE AUTISTIC;
D.H. and T.H., Individually and as next friends on behalf of their child B.H.;
T.D. and A.D., Individually and as next friends on behalf of their child A.D.;  17CV6866
P.M., Individually and as next friend on behalf of her child R.M.;
M.C. and K.C., Individually and as next friends on behalf of their child A.B.;
M.H. and F.H., Individually and as next friends on behalf of their child A.H.;  (Spatt, J.)
and M.C. and M.C., Individually and as next friends on behalf of their child T.C.,

                                                      Plaintiffs,
        -against-                                               (Lindsay, M.J.)

NEW YORK STATE EDUCATION DEPARTMENT,
MARYELLEN ELIA, in her official capacity as NEW YORK STATE
COMMISSIONER OF EDUCATION, and
KAREN NEILSEN and JULIA NAGLE, in their official capacities as
REGIONAL ASSOCIATES of THE NEW YORK STATE EDUCATION
DEPARTMENT,

                                                      Defendants.
-------------------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN REPLY AND IN FURTHER SUPPORT
OF MOTION TO DISMISS COMPLAINT, PURSUANT TO FRCP RULE 12(b)(1) & (6)**


                                         Respectfully submitted,

                                         **BARBARA D. UNDERWOOD**
                                         **Acting Attorney General of the State of New York**
                                         200 Old Country Road, Suite 240
                                         Mineola, New York 11501
                                         (516) 248-3302


**DOROTHY OEHLER NESE**
**Assistant Attorney General**
 **Of Counsel**

# TABLE OF CONTENTS

**STATEMENT OF FACTS**   1

**ARGUMENT**   2

**POINT I**
**PLAINTIFFS LACK STANDING, THEIR CLAIMS ARE NOT RIPE**
**AND ENTIRELY LACK MERIT**   2

    A.   THE PARENT PLAINTIFFS LACK STANDING   2

    B.   THE SCHOOL PLAINTIFFS LACK STANDING   4

    C.   PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY RELIEF   6

    D.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE
        REHABILITATION ACT   6

**POINT II**
**THE *EX PARTE YOUNG* DOCTRINE DOES NOT SAVE**
**PLAINTIFFS' CLAIMS**   7

**POINT III**
**THE COURT SHOULD DISMISS THE ARTICLE 78-RELATED CLAIMS**   7

**CONCLUSION**   9

# DEFENDANTS' MEMORANDUM OF LAW IN REPLY AND FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP RULES 12(b)(1) & (6)

## STATEMENT OF FACTS

Contrary to Plaintiffs' assertion, this case is not about whether the ABA instructional model employed by ASCENT and NSSA is effective, or whether the provision of related services by ASCENT and NSSA during the school day, onsite, would conflict with their preferred ABA modality. Plaintiffs' arguments can be distilled down to this simple precept: Plaintiffs, the owners/operators of two private schools and the parents of some of the students in attendance, believe that they, rather than NYSED, should determine which, if any, federal and state statutes and regulations ASCENT and NSSA must comply with, in order to provide the student Plaintiffs with a FAPE. There simply is no support in federal or state laws or regulations (nor do Plaintiffs cite to any in the Petition) for the proposition that ASCENT and NSSA are free to make up their own methodology and have it substitute for the requirements of the IDEA or New York State Education Law and regulations promulgated thereunder.

Plaintiffs disingenuously claim that there are no federal or state laws requiring related services to be provided by a school, as opposed to by a school district (Plaintiffs' Memorandum of Law In Opposition ("P MOL"), p. 5). This ignores the fact that federal and state laws require NYSED to set the standards for how and where the LEAs (and by extension, ASCENT and NSSA, as State-approved private schools to which the LEAs refer their students and for which they receive reimbursement) provide related services. *See* 20 U.S.C. § 1412(a)(11)(A)(ii)(II). NYSED has determined that providing related services to special education students during the school day and within the school setting will best provide the students with a FAPE. Indeed, the Supreme Court has noted that "'[R]elated services' are those 'services that enable a disabled child to remain in school

1

during the day [to] provide the student with 'the meaningful access to education that Congress envisioned,'" *Cedar Rapids Community Sch. Dist. v. Garret F.*, 526 U.S. 66, 73 (1999)(quoting *Irving Independent Sch. Dist. v. Tatro*, 468 U.S. 883, 891 (1984); *accord*, *R. A-G v. Buffalo City Sch. Dist. Bd. of Educ.*, 2013 U.S. Dist. LEXIS 93924, pp. *3-4 (WDNY 2013)(Skretny, J.); *C.B. ex rel W.B. v. N.Y. City Dep't of Educ.*, 2005 U.S. Dist. LEXIS 15215, pp. *85-86 (EDNY 2005)(Pollak, M.J.).

Likewise, NYSED's Final Audit Reports' findings that require ASCENT and NSSA to comply with the relevant federal and state statutes and regulations are not "unlawful directives" (P MOL p. 5); they are evidence of NYSED's compliance with its own obligations as an SEA, under federal law. "For students placed in private schools by a public agency, the state 'shall determine whether such schools and facilities meet standards' that apply to public schools, and ensure that the students 'have all the rights the children would have' if enrolled in public school. 20 U.S.C. § 1412(a)(10)(B)(ii); *see also* 34 C.F.R. § 300.2(c)(1). . . ." *Z.H. v. New York City Dep't of Educ.*, 107 F. Supp. 3d 369, 374-376 (SDNY 2015)(Castel, J.). Plaintiffs' additional claim that the findings regarding instructional lunches and physical education "are not compelled by State law", flies in the face of NYSED regulations that specifically require private schools to follow the requirements set forth in part 175 of 8 N.Y.C.R.R.. *See, e.g.,* 8 NYCRR § 175.5(a)(3); *cf.*; 8 NYCRR § 220.7(b)(4) (requiring 5 ½ hours of instructional time for students in grades 7-12, not including lunchtime).

## ARGUMENT

### Point I
### PLAINTIFFS LACK STANDING, THEIR CLAIMS ARE NOT RIPE AND ENTIRELY LACK MERIT

**A. THE PARENT PLAINTIFFS LACK STANDING**

The Parent Plaintiffs claim to possess standing because their "live case and controversy" consists of the (speculative) harm they would experience should ASCENT and NSSA be forced to

close due to lack of state funding if they were removed from the list of State-approved schools, and the student Plaintiffs were forced to move to other schools. P MOL p. 8. It is clear that as a matter of law, parents are not entitled to choose a particular methodology of instruction for their children. "[P]arents are not entitled to choose an educational methodology under the IDEA . . . ." *F.L. ex rel. F.L. v. New York City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 149296, 2012 WL 4891748 p. *9 (S.D.N.Y. 2012) *aff'd*, 553 F. App'x at 2; *A.S. v. N.Y.C. Dep't of Educ.*, 573 F. App'x 63, 66 (2d Cir. 2014)("We are required to give particular deference to state educational authorities on the issue of educational methodology, *see Bd. of Educ. v. Rowley*, 458 U.S. 176, 207, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982), and on this record it cannot be said that A.S. could only progress in an ABA program."). Therefore, it is hard to understand how in this instance, Plaintiffs can claim entitlement not only to a particular methodology, but one that violates State requirements for educational programming.

The Parent Plaintiffs simply are not aggrieved by the State's findings in its monitoring or the CAP. The students continue to attend the school of their parents' choice. As Plaintiffs concede, most students do not have related services on their IEPs and are therefore unaffected by the simple requirement imposed by Defendants that the schools provide such services for students who do. Plaintiffs admit that at best, their claim is only speculative - that one day, *if* the schools lose approval from NYSED and *if* the schools decide to close because of the loss of such approval, the parents and school districts will have to find alternate placements for their children. With such a speculative fact pattern, there is no telling whether a new proposed placement would violate FAPE or not, which then would authorize a parent to challenge the placement (20 U.S.C. §1415 (b)(6)(A)). At this juncture, the Parent Plaintiffs simply have no claim.

At p. 16 of P MOL, Plaintiffs cite to *ACLU v. Clapper*, 785 F.3d 787, 803 (2d Cir. 2015) in support for their contention that the IDEA gives them standing to bring this lawsuit, and that they

3

are not required to exhaust the administrative remedies found in 20 U.S.C. § 1415 before doing so. Both this citation and this argument are incomprehensible: first, because Plaintiffs have conceded that this lawsuit is not about challenging a special education student's placement nor about his or her IEP; and second, because *ACLU v. Clapper* has nothing whatsoever to do with the IDEA, the Rehabilitation Act or anything else at issue in this case.

### B. THE SCHOOL PLAINTIFFS LACK STANDING

Plaintiffs' reliance on *Brooklyn Sch. For Spec. Children*, 1997 U.S. Dist. LEXIS 12974 (S.D.N.Y. 1997)(Preska, J.) in support of their claim of standing is misplaced. P. MOL., pp. 9-10. In that case, the District Court held that the school possessed standing to sue under the IDEA to enforce the rights of its students, by analogizing the IDEA to the Boren Amendment to the Medicaid Act, and by citing to *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990)(*Held*: health care provider possessed standing to sue under 42 U.S.C. § 1983 (1982 ed.) to challenge the method by which a State reimburses health care providers under the Medicaid Act). However, the Supreme Court in *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015) abrogated that holding of the *Wilder* decision, noting that Congress had amended the relevant portion of the Medicaid Act in 1989. *Id, pp.* 1386-87; *see also In re NYAHSA Litig.*, 318 F. Supp. 2d 30, pp. *38-39 (N.D.N.Y. 2004)(Hurd, J.)(noting Congressional repeal of Boren Amendment "to eliminate a basis for causes of action by providers to challenge reimbursement rates"), *affd.*, *New York Ass'n of Homes & Servs. for the Aging, Inc. v. Debuono*, 444 F.3d 147, 2006 U.S. App. LEXIS 8371.

Case law clearly holds that the IDEA does not create a private right of action in favor of schools against NYSED, and Plaintiffs' attempt to distinguish these cases is unpersuasive. The Second Circuit held that an LEA has no right of action to sue a state educational agency under the IDEA. *See E. Ramapo Cent. Sch. Dist. v. DeLorenzo*, No. 13-CV-1613 CS, 2013 WL 5508392, at *6

4

(S.D.N.Y. Oct. 3, 2013), citing *Cnty. of Westchester v. New York*, 286 F.3d 150, 153 (2d Cir.2002)(per curiam)(affirming dismissal of suit against NYSED and refusing to "imply a private cause of action in the absence of clear congressional intent and in the face of an express allocation of enforcement authority" to Secretary of Education).

In addition, Plaintiffs challenge the applicability of *Matter of East Ramapo Cent. Sch. Dist. v King*, 29 N.Y.3d 938 (2017) to the facts in this case, claiming, *inter alia*, that requiring ASCENT and NSSA "to wait to sue until NYSED revokes their program approval and cuts off [their] funding" would give rise to an emergency situation requiring an immediate TRO. P MOL pp. 12-13. In the first place, NYSED does not "revoke program approval" and "cut off funding" instantaneously. In the absence of the instant lawsuit and in the normal course of events, if NYSED were to revoke program approval for the schools, Plaintiffs would be accorded due process rights through an administrative hearing, if they requested one. Afterwards, a properly, timely commenced Article 78 proceeding in state court should suffice to challenge any state agency determination not in their favor. This is not the time, and this litigation is not the correct vehicle in which to obtain such relief, and Plaintiffs' supposition of events that might occur in the future only demonstrates their lack of standing, because they have suffered no actual harm. Moreover, the idea that complying with the Final Audit Report findings would subject the schools to "burden and expense" also is unsupported, because NYSED has already informed ASCENT and NSSA that they would receive adjustments to their reimbursement rates when the schools implement the required corrective actions.

Taken together, the decisions in *Matter of East Ramapo Cent. Sch. Dist. v King*, 29 N.Y.3d 938 (2017) and its companion federal court case, *E. Ramapo Cent. Sch. Dist. v. DeLorenzo*, 2013 U.S. Dist. LEXIS 143898 (S.D.N.Y. 2013)(Seibel, J.) support Defendants' view that the only private right of action under the IDEA lies in an administrative due process complaint regarding services for and

placement of a child; that there is no private right of action permitting school districts, and in this case by extension, a State-approved private school, to sue NYSED; and consequently, that declaratory relief is not available under the IDEA or § 1983, under the facts of this case.

### C. PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY RELIEF

Plaintiffs also erroneously cite to *Barry [sic - Burkhart] v. City of New York*, 933 F. Supp. 2d 416 (E.D.N.Y. 2013) in support of their belief that the mere threat of impending harm - however speculative - will entitle them to declaratory relief, if government action is or will be the source of that harm. P. MOL. pp. 11-12. Plaintiffs still bear the burden to show the "sufficient immediacy and reality" of the threatened harm, in order "to warrant the issuance of a declaratory judgment." *New Eng. Shipping Co. v. Block Island Pilots*, 2006 U.S. Dist. LEXIS 65975, p. *16 (EDNY 2006)(Spatt, J.). Defendants submit that they have not, and cannot do so.

### D. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE REHABILITATION ACT

Plaintiffs also futilely look to *Disabled in Action v. Bd. of Elections*, 752 F.3d 189 (2d Cir. 2014) to support their claim that they need not plead intentional discrimination or bad faith in order to obtain equitable relief under the Rehabilitation Act. P. MOL. P. 22. That case dealt with Rehabilitation Act and ADA-based claims challenging access by the disabled to polling places. It is undisputed that in this Circuit, when one is bringing a claim under Section 504 in conjunction with a claim under the IDEA, "[T]he scopes of the two statutes are different, and proving a violation of Section 504 of the Rehabilitation Act requires showing, among other things, that the defendants acted with bad faith or gross misjudgment in the administration of disability services." *P. v. West Hartford Bd. of Educ.*, 885 F.3d 735, 760 (fn. 3)(2d Cir. 2018), citing *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840-41 (2d Cir. 2014). In any case, it is unreasonable to ask the Court to infer

6

that the Final Audit Report findings constitute intentional discrimination or deliberate indifference. (P. MOL pp. 22-23). NYSED's findings and the Corrective Action Plans show that NYSED is meeting its obligation under federal law to ensure that LEAs (and by extension, the State-approved schools to which the LEAs refer their special education students) comply with NYSED's laws and regulations, which are designed to provide these students with an education in an environment that is as similar as possible to that afforded to students who are not disabled.

**Point II**
**THE *EX PARTE YOUNG* DOCTRINE DOES NOT SAVE PLAINTIFFS' CLAIMS**

The *Ex Parte Young* exception to Eleventh Amendment immunity that allows a plaintiff to recover prospective, injunctive relief against state officers sued in their official capacities requires a plaintiff to allege an ongoing violation of federal law and to seek relief that is **properly** characterized as prospective. *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 420 (EDNY 2014)(Spatt, J.)(emphasis added). First, as set forth, *supra,* and in Defendants' Memorandum of Law in Support, Plaintiffs have not stated a violation of the IDEA or the Rehabilitation Act, and therefore have no federal law upon which to premise *Ex Parte Young* relief. Second, "[a] plaintiff may not use this doctrine to adjudicate the legality of past conduct." *Id.*, citing *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986). Plaintiffs cannot plausibly claim that Defendants' alleged violations of § 1983 are "ongoing". In fact, the declaratory and injunctive relief they seek cannot **properly** be characterized as prospective in nature when what they really seek is retroactive, equitable relief vacating NYSED's past determinations found in the SEQA reports and CAPs requiring Plaintiffs' programs to comply with federal and state laws and regulations - in other words, garden-variety Article 78 relief.

**Point III**
**THE COURT SHOULD DISMISS THE ARTICLE 78-RELATED CLAIMS**

Contrary to Plaintiffs' assertion, Defendants do not contend that a federal court cannot

7

entertain a claim under CPLR Article 78. P. MOL pp. 24-25; *cf.*, Defendants' Memorandum of Law in Support, pp. 21-22. Defendants merely urge the Court to decline to retain pendant jurisdiction, in the event that the Court dismisses the federal claims in the Complaint. Plaintiffs also deny that they are asking the Court to apply the principles of laches or estoppel to prevent NYSED from enforcing federal and state laws and regulations. Rather, Plaintiffs claim that they are "addressing the inconsistency between Defendants' past practices . . . and present positions" as a way of establishing that NYSED's Final Audit Reports and Corrective Action Plans are arbitrary and capricious. P. MOL. p. 25. In other words, Plaintiffs are asking the Court to find that NYSED's purported failure to enforce the relevant statutes and regulations in the past renders it's present efforts to do so arbitrary and capricious, and to issue an injunction in Plaintiffs' favor, estopping NYSED from enforcing the statutes and regulations now. That is the essence of equitable estoppel relief.

Government officials "generally are given broad discretion in their decisions whether to undertake enforcement actions." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). "This Court has recognized . . . that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). "[A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. . . . The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.*, 831-32. "[P]rinciples of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow." *New York v. UPS*, 160 F. Supp. 3d 629, 640 (S.D.N.Y. 2016)(Forrest, J.), quoting *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994). "[E]stoppel may not be applied to preclude a State or municipal agency from discharging its statutory responsibility." *Id.*, quoting *City of New York v. City Civil Serv.*

8

*Commission*, 60 N.Y.2d 436, 449 (1983). The Court should reject Plaintiffs' estoppel-based arguments.

Defendants also disagree with Plaintiffs' characterization of Defendants' history of monitoring and enforcement efforts over special education school programs. NYSED is responsible for supervising the provision of special education services in more than 150 private schools (ASCENT and NSSA, included) that are devoted solely to educating special needs students from preschool age through 21 years, in accordance with the relevant federal and state statutes and regulations governing special education. *See* http://www.p12.nysed.gov/specialed/privateschools/home.html. Further, SEQA is charged with monitoring 733 school districts throughout New York State to ensure that they comply with special education laws, rules and regulations. *See* https://data.nysed.gov. In fact, SEQA conducted a quality assurance preschool focused review for NSSA in 2004. In 2012, NYSED determined that it was unacceptable for State approved non-public schools to refuse to provide related services as stated in a students' IEP, and began to take steps to correct the situation, *see* http://www.p12.nysed.gov/specialed/dueprocess/NYC-IHO-RSA-912.htm . Defendants' role in carrying out NYSED's supervisory functions under the IDEA and applicable state statutes and regulations is an ongoing, fluid process. The Court should refuse to halt Defendants' administrative actions to compel ASCENT and NSSA to comply with the laws.

## CONCLUSION

The Court should reject Plaintiffs' attempt to dress up this garden-variety, premature Article 78 proceeding into a federal civil rights lawsuit. Plaintiffs are asking the Court to substitute its judgment (and by extension, the Plaintiffs' judgment) for NYSED's determination as to how to oversee the provision of FAPE to New York State students. Plaintiffs cannot point to any provision in federal or state law that would allow NYSED to delegate that oversight authority to the LEAs, State-

9

approved private schools or parents, let alone to permit a court to take that duty away from NYSED and give it to the LEAs, private schools or parents. Furthermore, a Court ruling that allows Plaintiffs ASCENT and NSSA to pick and choose those statutes and regulations (if any) with which they must comply would vitiate New York State's complex educational scheme that is designed to provide all students with FAPE. It also would create the untenable situation where the State would fall out of compliance with federal statutes and regulations, consequently jeopardizing federal funding for education in New York State. Federal law requires NYSED, not the LEAs, State-approved private schools or parents, to determine what is required in order to comply with the IDEA. Defendants respectfully submit that the Court should dismiss the Complaint, with prejudice.

Dated:  May 18, 2018
        Mineola, New York

                                    BARBARA D. UNDERWOOD
                                    Acting Attorney General of the State of New York
                                    Attorney for Defendants

                            By:     _____
                                    Dorothy Oehler Nese
                                    Assistant Attorney General, of counsel