UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ASCENT: A SCHOOL FOR INDIVIDUALS WITH
AUTISM, NASSAU SUFFOLK SERVICES FOR THE
AUTISTIC; D.H. and T.H., *individually and as next
friends on behalf of their child B.H.,* T.D. and A.D.,
*individually and as next friends on behalf of their child
A.D.,* P.M., *individually and as next friend on behalf of
her child R.M.*, M.C. and K.C., *individually and as next
friends on behalf of their child A.B.,* M.H. and F.H.,
*individually and as next friends on behalf of their child
A.H.,* and M.C. and M.C., *individually and as next friends
on behalf of their child T.C.,*

**REPORT AND
RECOMMENDATION**
CV 17-6866 (JS)(ARL)

                                        Plaintiff,

                -against-

NEW YORK STATE EDUCATION DEPARTMENT,
MARYELLEN ELIA, i*n her official capacity as New York
State Commissioner of Education*, and KAREN NELSEN
and JULIA NAGLE, *in their official capacities as Regional
Associates of The New York State Education Department*,

                                        Defendants.
---------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Before the Court on referral from District Judge Seybert is the defendants' motion to
dismiss the complaint pursuant to Fed. R. Civ. P. 12 (b)(1) and (6).   For the reasons set forth
below, the undersigned respectfully recommends that the defendants' motion be granted.

## BACKGROUND

The facts set forth in this report were drawn from the complaint together with
"documents incorporated in it by reference" and "document[s] upon which the complaint heavily
relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).   The facts are taken as true for
purposes of deciding the instant motion.

### A.    The Parties

The plaintiffs, Ascent: A School for Individuals with Autism ("Ascent") and the Nassau

Suffolk Services for the Autistic ("NSSA"), are education corporations that operate private schools exclusively for children on the autism spectrum.   Compl. ¶¶ 1-2, 22.   Students enrolled at Ascent and NSSA have extreme learning deficits that make traditional classroom models of instruction ineffective.   *Id.* ¶ 26.   For this reason, Ascent and NSSA offer highly specialized education programs based on the principles of Applied Behavior Analysis ("ABA") designed to meet the individualized goals of their students.   *Id.* ¶¶ 17, 31.   The plaintiffs, D.H., T.H., A.D., T.D., P.M. and R.M. are parents of students enrolled at NSSA.   *Id.* ¶¶ 3-5.   M.H., F.H., M.C., K.C., M.C. and M.C. are parents of students enrolled at Ascent.   *Id.* ¶¶ 6-8.   D.H., T.H., A.D., T.D., P.M., R.M. M.H., F.H., M.C., K.C., M.C. and M.C. are collectively referred to in this report as parent plaintiffs.

The defendant, New York State Education Department ("NYSED"), is an agency of the State of New York with duties and responsibilities set forth in the New York Education Law §101 et seq.   *Id.* ¶ 9.   The defendant, MaryEllen Elia ("Elia"), is the New York State Commissioner of Education responsible for overseeing the activities of NYSED.   *Id.* ¶ 10.   The defendants, Karen Nelsen ("Nelsen") and Julia Nagle ("Nagle"), are Regional Associates of NYSED working at NYSED's office in Hauppauge.   *Id.* ¶ 11.

### B.   NYSED's Review of School Programs and the May 2016 Letters

In or about May 2016, NYSED conducted a focused review of school programs.   *See id.* ¶ 166.   According to the defendants, the review uncovered numerous violations of federal and state statutes and regulations governing the provision of educational services to disabled students.   Defs.' Mem. at 1.   Following their review, NYSED issued reports to noncompliant schools that included Compliance Assurance Plans ("CAPs") setting forth the steps that schools needed to take to bring their programs into compliance.   *Id*.   NYSED sent such a report to

NSSA on May 13, 2016, and to Ascent on May 18, 2016.   Compl. ¶ 166; Defs.' Mem. Appx.
Both reports state "it has come to our attention that the [school] is not offering *'related services'*
to students enrolled in its special class programs." Compl. ¶ 166 (emphasis added).

According to the plaintiffs, when NSSA initially received approval from the NYSED in
1992, the approval letter did not expressly mention any related services to be provided by NSSA
although the NYSED was aware that NSSA wanted to address the therapeutic needs of its
students through generalists.   *Id.* ¶ 165.   NSSA's approval letter was then amended in 2007 and
again in 2011.   *Id.*   The 2007 and 2011 approval letters expressly noted that NSSA did not
provide its students with related services.   *Id.*   Similarly, Ascent's approval letter, which it
received from NYSED in 2002, notes that no related services or physical education will be
provided by Ascent.   *Id.* ¶ 164; Defs.' Mem. Appx.   Nevertheless, the May 2016 letters sent to
both NSSA and Accent state that in 2013, NYSED revised its approval process to require that all
approved programs provide a comprehensive list of related services to meet anticipated
individualized education program ("IEP") needs of students enrolled in private programs.
Compl. ¶ 167; Defs.' Mem. Appx.    Ascent and NSSA contend that they were not informed of
any policy change before they received the letters in 2016.   Compl. ¶ 167

The NYSED letters further state that New York regulations "must ensure that all
approved programs provide all the special education and related services in a student's IEP
during the school day" and that "an approved school offer the instruction and services
recommended in the [IEP of a student with a disability]."[1]  *Id.* ¶ 168.   Based on those

---

[1] Section 200.7 of the New York Code Rules and Regulations sets forth "[p]rogram standards for education
programs for students and preschool students with disabilities being educated in private schools and state-operated
or state-supported schools.   Subsection (b)(4), which governs the administration of private schools, provides:

   4) The length of the school day shall be comparable to that required by section 175.5 of this
   Title. The school day shall include instructional services and related services, as required, but

regulations, NYSED concluded that "students with autism are frequently recommended for related services, such as speech and language therapy, physical therapy, occupational therapy, and parent counseling and training services."   *Id.*   Accordingly, the defendants ordered Ascent and NSSA to take "immediate steps to . . . provide such related services to students placed in [their] special class programs." *Id.*

Ascent and NSSA contend that the instruction they provide to their students is much more effective than related services.   *Id*. ¶¶ 58-95.   They argue, in this regard, that Applied Behavioral Analysis focuses on teaching children with autism the basic life skills they need to improve their quality of life.   *Id*. ¶ 57.   For example, when one of their students lacks the necessary motor skills to perform a task, ABA instructors teach him or her the prerequisite motor skills in discrete parts and then practice the skill with the student repeatedly.   *Id*. ¶ 61.   Once the skill is learned, the student is then taught to incorporate the skills into a more complex response sequence.   *Id.*   The curriculum is individualized for each student and the student's progress is tracked and analyzed daily so that the effectiveness of the instruction can be assessed.   *Id*. ¶¶ 31-34.

The plaintiffs further assert that a key element of Applied Behavioral Analysis is generalization, that is, the transfer of a learned skill from one task and environment to multiple tasks and environments.   *Id*. ¶ 46.   For generalization to occur, the skills must be taught in all environments in which the student is going to use them.   *Id*. ¶ 65.   For this reason, Ascent and NSSA have students move to different settings throughout the day and work on different skills with different instructors.   *Id*. ¶ 47.   These instructors are New York State certified special

───────────

shall not include transportation.

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.7

4

education teachers and teaching assistants, who are trained generalists and can teach different skills interchangeably. *Id*. ¶ 43.   In contrast, at traditional schools, classroom instruction for students with autism is usually supplemented by "related services." *Id*. ¶¶ 51-53.

Most of students attending Ascent and NSSA have IEPs that do not require any related services. *Id*. ¶ 155.   The plaintiffs assert that the reason their students IEPs do not require related services is because, in many cases, the Committees on Special Education ("CSEs") convened by the students' school districts determined that the related services students had been receiving at their prior schools had little or no success. *Id*. ¶¶ 153-56.   Indeed, in many instances, students were placed at Ascent or NSSA because their CSEs believed that an ABA-based programs would be more beneficial. *Id*.   They plaintiffs note, however, that there are a few Ascent and NSSA students who do require or whose parents still want them to receive related services. *Id*. ¶ 157.   Those students receive the related services mandated by their IEPs after school either at home or in a therapist's office. *Id*. ¶ 158.

In September 2016, Ascent and NSSA met with representatives from the NYSED and explained that their ABA-based curricula and techniques fully address the same needs as related services albeit in a more effective way. *Id*. ¶¶ 174-75.   The schools argued that requiring the schools to provide related services during the school day would fundamentally impair the effectiveness of their ABA programs. *Id*. ¶ 177.   According to the plaintiffs, the NYSED did not dispute their arguments at the meeting. *Id*. ¶ 178.   Nonetheless, the NYSED stated that because the IDEA requires all schools serving children with disabilities to provide all related services mandated by their students' IEPs during the school day, the NYSED could not authorize public funding for any school failing to provide such services. *Id.*

Around the same time, the NYSED's Office of Special Education Quality Assurance

("SEQA") also commenced a "focused review" of Ascent and NSSA. *Id.* ¶ 184.   In advance, the schools were notified that the protocol for the review was designed to determine if the schools followed federal and state laws and regulations regarding the provision of special education programs and services for students with disabilities. *Id.*   On July 26, 2017, NYSED issued "Final Audit Reports" that also found that Ascent and NSSA were not in compliance with section 200.6(a)(2) of the regulations because the schools did not offer related services during the school day. *Id.* ¶ 189; *see also* Defs.' Mem Appx.   In addition, the Final Audit Reports determined that both schools were out of compliance with State law because their school day had 30 minutes less instruction than is required.   Compl. ¶ 225.   The plaintiffs contend that in doing so the NYSED erroneously determined that the 30-minute lunch period during which their students work on "eating goals" was not instruction.   *Id.* ¶¶ 225-38.   Finally, the audit reports found that the schools were "non-compliant" because they do not offer traditional physical education.   *Id.* ¶¶ 239-51.   The plaintiffs contend that they never offered traditional physical education because it is not appropriate for their students.   *Id.* ¶¶ 244-45.

The Final Audit Reports imposed a deadline of April 30, 2018, by which Ascent and NSSA were to take corrective action by "arrang[ing] either through hiring of appropriately licensed/certified related services staff or through contract with appropriately licensed/certified staff to provide all of the related services recommended on the IEPs of the students enrolled in the program." *Id.* ¶ 191.   The audit reports also directed the schools to change their programs to provide 5.5 hours of instruction for school age students exclusive of the instructional lunch period and to provide for physical education.   *Id.* ¶ 227.   Despite the April 2018 deadline, as of the motion was filed, no sanctions had been imposed as result of the schools' noncompliance. Defs.' Mem. at 16

### C.        Procedural History

The plaintiffs contend that the NYSED's findings left them with a "Hobson's choice" –

lose their status an approved program eligible to receive public funding or incur the expenses

related to the required "corrective" actions, which they say will cost them money but not benefit

their students.   Accordingly, on November 22, 2017, the plaintiffs commenced this action

seeking, among other things, a declaration that (1) the results of NYSED's focused review

violated the provisions of the Individuals with Disabilities Education Act ("IDEA"); (2) the

student plaintiffs' rights under Section 504 of the Rehabilitation Act were violated by NYSED's

findings; and (3) NYSED's determinations were affected by error of law, arbitrary, capricious

and not rationally based, under N.Y. CPLR Article 78 review.   The plaintiffs also seek a

declaration that they would be deprived of their rights to be fully educated in an ABA based

program in violation of 42 U.S.C. § 1983 if they were required to take corrective action.

Finally, the plaintiffs seek a permanent injunction preventing NYSED from compelling

ASCENT and NSSA to carry out the corrective action set forth in the Compliance Assurance

Plan and enjoining NYSED from otherwise enforcing its findings.   On March 9, 2018, the

defendants filed the instant motion to dismiss the complaint for lack of jurisdiction and failure to

state a claim.

## DISCUSSION

### A.        Standards of Review

### 1.   Rule 12(b)(1)

The defendants have moved to dismiss the complaint under both Rule 12(b)(1) and

12(b)(6). "'When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction, and also moves to dismiss on other grounds, . . . the Court must consider the Rule

12(b)(1) motion first.'" *Craig x. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)).   "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)(citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).   In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider relevant documents that are extrinsic to the complaint.   *See id.*

## 2.   Rule 12(b)(6)

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)).   The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.   District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.   Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*   Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

8

rise to an entitlement to relief."  *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

**B.    Statutory Framework**

**1.    The IDEA**

"The purpose of the IDEA is, among other things, to "ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" *C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.,* 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016) (citing 20 U.S.C.A. § 1400(1)(A)).   "Related services" include services such as speech, language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation and others, as may be required to assist a child with a disability to benefit from special education . . .. 20 U.S.C. §1401(26).   According to the defendants, with little exception, related services are provided by licensed professionals regulated by NYSED's Office of Professions.   Defs.' Mem. at 6.   If a severely autistic child's IEP requires the provision of "related services," the failure to provide such services may violate the IDEA.   *See e.g., L.O. v. N.Y City Dept. of Educ*., 822 F.3d 95, 144 (2d Cir. 2016).

"The primary mechanism of the [IDEA] is the design and implementation of an IEP to address each student's particular disabilities." *Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ*., 827 F. Supp. 2d 130, 136 (E.D.N.Y. 2010) (citing 20 U.S.C. § 1414).   "The IEP

sets forth (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how the child's progress toward meeting the annual goals will be measured; (4) a statement of the educational services to be provided; (5) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class; (6) a statement of any individual accommodations necessary to measure the child's performance on standardized assessments (or an explanation of why the child cannot participate in the assessments); (7) the projected date for the implementation of services, as well as the anticipated frequency, location, and duration of the services; and (8) a plan for achieving postsecondary school goals and provisions for transitional services." *Id.* (citing 20 U.S.C. § 1414 (d)(1)(A)).   "The IEP is developed by a team that includes the child's parents, teachers, and representatives of the local education agency.  *Id.* (citing 20 U.S.C. § 1414(d)(1)(B)).   "In New York State, this team is known as a Committee on Special Education . . .." *Id.* (citing N.Y. Educ. Law § 4410–b(1)(c)).   "As a general rule, IDEA requires that, at least once a year, the CSE review the IEP and make any necessary revisions." *Id.* (citing 20 U.S.C. §1414(d)(4)(A)(i)).

## 2.   The NYSED's Role in Administering the IDEA

According to the defendants, "[d]uties under the IDEA are divided between local educational agencies ("LEA") and state educational agencies ("SEA")."   Defs.' Mem. at 7.   The NYSED is a SEA, and therefore, has a general supervisory role to ensure that the requirements of the IDEA are met, s*ee* 20 U.S.C. § 1412(a)(11)(A)(i), and that "all educational programs for children with disabilities in the State, including programs administered by any other State agency or local agency. . . meet the educational standards of the State educational agency."   *See* § 1412(a)(11)(A)(ii)(II).   "In order to receive federal funding, [a SEA], such as [the NYSED],

must implement a policy to assure that children with disabilities receive a FAPE." 20 U.S.C. §

1412(a)(1).   For this reason, in New York, the State, through the NYSED, has enacted statutory

and regulatory provisions to meet its obligations under federal law and to implement its own

policies regarding the education of disabled students.   *See* Educ. Law §§ 4401 et seq.; 8

N.Y.C.R.R. §§ 200.1 *et seq.*   Typically, an LEA must demonstrate to the SEA's satisfaction that

it is providing for the education of disabled students within its jurisdiction and has policies,

procedures and programs in place that are consistent with state standards, policies and

procedures established under § 1412.   *See id.* § 1413(a)(1).   In addition, as part of its

supervisory role, the SEA must ensure that LEAs placing students in private schools provide

them with special education and related services that conform to the student's IEP and are

provided at no cost to the parents.   *See* 34 CFR §§ 300.2(c)(1).   Indeed, a student attending a

private school must be provided with the same rights as a student attending a public school.   *Id.*

If the NYSED finds that an LEA or a state approved non-public school is not following the

IDEA or state regulations, the NYSED must ensure that the noncompliance is corrected as soon

as possible, but at least within one year from the date the NYSED identified the infraction.   *See*

34 C.F.R. § 300.600(e).   According to the defendants, if the violations are not corrected, schools

may be removed from the state approved non-public school list.   Defs.' Mem at 10.

   **3.     New York's IDEA Grievance Process**

   "Under the educational scheme of the IDEA . . ., parents of students with disabling

conditions are guaranteed both an opportunity for meaningful input into all decisions affecting

their child's education and the right to seek review of any decisions they think inappropriate."

*Cave v. E. Meadow Union Free Sch. Dist*., 514 F.3d 240, 245 (2d Cir. 2008).   Specifically,

"[p]arents are . . . entitled to request a due process hearing in order to present complaints as to

any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." *Id.;* see also 20 U.S.C. § 1415 (b)(6)(A).

In New York state, the administrative proceedings involve a two-stage process.   The first step involves a review and determination of the issues by an impartial hearing officer ("IHO").   *See* Educ. Law § 4404(2); 20 U.S.C. § 1415(g).   Thereafter, the parent may appeal the determination to a state review officer ("SRO").   *See* Educ. Law §§ 4404(1)-(2).   The SRO's decision is the final agency determination and concludes the state administrative review.   An aggrieved party may then challenge the SRO's decision either in a special proceeding in state court pursuant to Article 4 of the CPLR or by bringing a civil action in federal court pursuant to the IDEA.   *See* 20 U.S.C. § 1415(i)(2)(A); Educ. Law § 4404(3)(a).

However, an aggrieved party is required to first exhaust all administrative remedies before bringing a civil action in federal or state court.   *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 204–05 (2d Cir. 2007) (citing *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004)).   Indeed, the exhaustion requirement set forth in the IDEA is quite broad:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted* to the same extent as would be required had the action been brought under this subchapter.

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) (citing 20 U.S.C. § 1415(l) (emphasis added)).   "Accordingly, a plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."   *Id.* at 207 ("I write separately to emphasize that I do not believe either *Kontrick v. Ryan*, 540 U.S. 443,

12

124 S. Ct. 906, 157 L. Ed. 2d 867 (2004), or *Eberhart v. United States*, 546 U.S. 12, 126 S. Ct.

403, 163 L. Ed. 2d 14 (2005) (*per curiam*), raises any doubt as to our well-established precedent

that federal courts lack subject matter jurisdiction over IDEA claims that are unexhausted.").

Nevertheless, it is important to note that the Courts do not require parties to exhaust

administrative remedies "in situations in which exhaustion would be futile." *Id.*   For example, in

some instances, exhaustion is not required where an agency has failed to provide services

specified in the child's individualized educational program.   *See Polera v. Bd. of Educ. of*

*Newburgh Enlarged City Sch. Dist*., 288 F.3d 478, 489 (2d Cir. 2002).   "To show futility, a

plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the

wrongs alleged could not or would not have been corrected by resort to the administrative

hearing process.'" *Id.* (citing *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447

(2d Cir.1987)).   With this framework in mind, the Court turns to the defendants' arguments.

### C.     The IDEA and Rehabilitation Act Claims

As a threshold matter, the defendants contend that the plaintiffs' first and fifth causes of

action must be dismissed because Ascent and NSSA ("the school plaintiffs") lack standing to

assert claims under the IDEA.   The first cause of action seeks a declaration that the corrective

action plan is contrary to the requirements of the IDEA with respect to the provision of related

services.   Compl. ¶¶ 252-68.   The fifth cause of action seeks to enjoin the NYSED from

compelling the plaintiff schools to increase the school day by 30 minutes in lieu of their student's

current instructional lunch and to provide traditional physical education because compelling the

schools to do so would deprive their students of a FAPE pursuant to 20 U.S.C. §1414 *et seq*.

"Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a

'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a

13

'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008).   "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849 (1997).   "In essence, the standing question is determined by 'whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" *E.M. v. New York City Dep't of Educ.,* 758 F.3d 442, 450 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

In this case*,* Ascent and NSSA claim that they have standing because they are facing an immediate threat of injury.   Specifically, they argue that if the schools are required to comply with the audit report directives, the schools will have to fundamentally alter their instructional programs and will no longer be able to offer full ABA-based instruction.   If, on the other hand, the schools choose not to comply with the audit directives, the schools risk the loss of their approved status and funding, which would result in their closure.   Despite their complaint of a concrete injury, which they themselves would suffer should they fail to comply with the audit directives, the defendants correctly note that there is still no private right of action permitting State-approved private schools to sue the NYSED under the IDEA.   *County of Westchester v. New York*, 286 F.3d 150, 152 (2d Cir. 2002).   Indeed, as stated above, the only private right of action under the IDEA lies in an administrative due process complaint "(a type of administrative challenge unrelated to the concept of constitutional due process)" regarding services for and placement of a child.   *See R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012); *Y.D. v. New York City Dep't of Educ.,* No. 14 CV 1137 LTS, 2016 WL 698139, at *4

14

(S.D.N.Y. Feb. 19, 2016)(citing *County of Westchester*, 286 F.3d at 152 ("The Second Circuit

has recognized that [the Section 1415 complaint] is the sole private right of action permitted by

the IDEA.")).

More specifically, pursuant to 20 U.S.C. §1415(i)(2)(A), the parents of disabled children

have standing to challenge "the findings and decision made [in an impartial due process hearing

conducted by a local educational authority] . . . [and] have the right to bring a civil action with

respect to the [due process complaint] presented . . . in any State court of competent jurisdiction

or in a district court of the United States." *Y.D*, 2016 WL at *4–5 (citing 20 U.S.C.S. §

1415(i)(2)(A)).   The IDEA does not, however, authorize a school or a school district to bring a

private right of action with respect to an NYSED finding even if the result of that determination

is an alteration of the services that the school provides to its students.   *See Y.D*, 2016 WL at *4–

5.   Indeed, in *County of Westchester v. New York*, the Second Circuit noted:

> Since Congress expressly provided a private right of action in favor of certain
> groups, specifically, any party aggrieved by particular findings or a decision
> rendered under subsection 1415, *see* 20 U.S.C. § 1415(i)(2)(A), but did not
> expressly provide a private right of action in favor of [an] *educational agency* .
> . . we find it extremely unlikely that Congress intended to do so.

286 F.3d at 152 (emphasis added); *C.f. Brooklyn Sch. for Special Children v. Crew*, No. 96 CIV.

5014 LAP, 1997 WL 539775, at *9 (S.D.N.Y. Aug. 28, 1997).[2]  That is not to say that schools

like Ascent and NSSA are left without a means to challenge an allegedly improper determination

---

[2] In 1997, the Southern District determined that twenty schools providing special education services to disabled
infants and toddlers had standing under the IDEA to challenge the actions and inactions of, among others, the New
York State Education Department, which prevented them from receiving reimbursement.   In so finding, Judge
Preska noted that '[t]he fact that disabled children and their parents are entitled to bring suits does not disentitle
providers from suing, in the event that they meet the requirements for standing under Article III of the Constitution
and prudential doctrines adopted by the federal courts." *Brooklyn Sch. for Special Children v. Crew*, No. 96 CIV.
5014 LAP, 1997 WL 539775, at *9 (S.D.N.Y. Aug. 28, 1997).   She further concluded that plaintiffs in that action
easily meet the standard because the loss of revenues to which they asserted entitlement was a sufficient injury,
fairly traceable to the defendants' conduct and susceptible to redress by a favorable decision from the court.
Although the Court agrees with the plaintiff that the facts of the *Brooklyn Sch. for Special Children* case are
analogous to this case, the Court is bound by the 2002 determination of the Second Circuit.

concerning the provision of their services.   Certainly, a proceeding under article 78 may be utilized to review the NYSED's findings especially since the crux of the plaintiffs' argument is that the NYSED's determination was arbitrary and capricious.   *Dovid v. U.S. Dep't of Agric.*, No. 11 CIV. 2746 PAC, 2013 WL 775408, at *12 (S.D.N.Y. Mar. 1, 2013), aff'd sub nom. *Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87 (2d Cir. 2014)("An Article 78 proceeding is a vehicle for challenging agency action as, inter alia, "arbitrary and capricious," which means lacking any "sound basis in reason.").   The undersigned simply concludes in this report that Ascent and NSSA cannot raise the challenge in the context of an IDEA violation.

Moreover, to the extent the parent plaintiffs appear to argue that that their children's IEPs will be impacted should the schools be forced to comply with the audit report directives and alter the ABA instruction, those arguments are still flawed.   To begin with, parents who wish to challenge their child's IEP as insufficient may typically request an impartial due process hearing before an impartial hearing officer ("IHO"), appeal the decision of the IHO to a state review officer ("SRO"), and then challenge the SRO's decision in either state or federal court, *see S.W. v. New York City Dep't of Educ.,* 646 F. Supp. 2d 346, 351 (S.D.N.Y. 2009).   However, in this case, the named defendants are not the proper parties for such a challenge.   As the Southern District noted in *Y.D.:*

> the IDEA only authorizes a private right of action with respect to a local educational authority's alleged failure to provide a prospective plaintiff with a FAPE. The [NYSED] is not a participant in the IEP process; it is merely a reviewer. Any controversy concerning whether a given IEP provides a FAPE is one between the aggrieved student and the relevant local educational agency, to which the SED and its officers are not parties in interest.

2016 WL at *5; *see also B.J.S. v. State Educ. Department/University of State of New York*, No. 07 CV 456A, 2011 WL 3651051, at *18 (W.D.N.Y. Aug. 18, 2011) ("this court, as well as other

district courts within New York, have concluded that NYSED may not be sued as a defendant to

an IDEA action brought pursuant to § 1415(i)(2)(A) challenging the failure to provide an eligible

student with a proper IEP to effectuate an FAPE"); *Kramer v. Springville–Griffith Inst. Cent.*

*Sch. Dist. Bd. of Ed.*, 02–CV–765S, Slip Op. at 21–23 (W.D.N.Y. July 31, 2003) (holding

NYSED not a proper party to parent's action based on the department's failure to ensure that

local school board provided plaintiff-student with a FAPE).

      Moreover, the parent plaintiffs have not pointed to any provision in the statue that

permits them to protest the adequacy of the defendants' efforts to monitor compliance with the

statute or with state regulations.   Indeed, as the Second Circuit noted in *A.A. ex rel. J.A. v.*

*Philips*, 386 F.3d 455 (2d Cir. 2004):

> Section 1412(a) (11) gives the SEA "general" supervisory responsibilities. . ..
> [W]hile the IDEA clearly places a supervisory and monitoring role on the
> SEA, the specific requirements of that role (with the exception of requiring the
> formulation of policies and procedures), are not set forth in the statute.
> Instead, the SEA has discretion to work with the LEA to ensure compliance
> with the IDEA. . .. It would be odd indeed if the state agency given discretion
> to monitor compliance with a statute were forced to shoulder the burden of
> establishing the adequacy of its efforts when confronted with merely a
> complaint in federal court.

386 F.3d at 459.   For this reason, courts have consistently held that the IDEA's private right of

action does not authorize claims against State agencies that are rooted in the State's general

supervisory role under the IDEA.   *See B.J.S.*, 699 F. Supp. 2d 586, 602 (W.D.N.Y. 2010).

      Moreover, Commissioner Elia, Nelsen and Nagle, who have all been sued in their official

capacities, are not proper parties to the lawsuit.   *Id.*   Indeed, "the fact that the New York

commissioner of education enjoys general supervisory authority over public education in New

York . . . is an insufficient basis upon which to impose legal responsibility upon [her or the] State

Education Department.   *Id.; see also Bruschini v. Bd. of Educ. of Arlington Cent. Sch. Dist.*,

1995 WL 807107, at *2 (S.D.N.Y. May 16, 1995) (state education officials would not be proper

party defendants absent allegations of "gross violation of due process" by the SRO).   In

addition, even if the parent plaintiffs had a basis to sue these defendants under the IDEA, they

have not exhausted their administrative remedies in large part, because their children's IEP are

yet to be affected.   It is well settled that "[a] plaintiff's failure to exhaust administrative remedies

under the IDEA deprives a court of subject matter jurisdiction." *See Polera,* 288 F.3d at 483.

Here, the parent plaintiffs have not taken any steps to address the instant dispute through an

administrative process nor have they suggested that seeking relief through an administrative

process in the future would be futile.   *See Coleman*, 503 F.3d. at 205 ("To show futility, a

plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the

wrongs alleged could not or would not have been corrected by resort to the administrative

hearing process.'").

　　　　Further, to the extent the parent plaintiffs[3] have asserted discrimination claims on behalf

of their children under the Rehabilitation Act, those claims must also be dismissed for failure to

exhaust.   In this case, the parent plaintiffs bring both claims under IDEA and a claim under §

504 of the Rehabilitation Act, 29 U.S.C. § 794.   However, all of the claims are based on the

NYSED's requirement that Ascent and NSSA provide related services to students which, they

say, will result in a reduction in the ABA-based services offered to their children.   The IDEA

"requires plaintiffs with any claims related to the education of disabled children, whether brought

under IDEA or another statute (e.g., the Rehabilitation Act), to exhaust the administrative

remedies available under IDEA prior to initiating a federal lawsuit." *Kalliope R. ex rel. Irene D.*

*v. New York State Dep't of Educ.*, 827 F. Supp. 2d 130, 137 (E.D.N.Y. 2010).   For these reasons,

the undersigned recommends that the first, third and fifth causes of action be dismissed for lack

---

[3] The parent plaintiffs are referred to as "Student Family Plaintiffs" in count three of the complaint.

of subject matter jurisdiction.

### D.    The Section 1983 Claims

The plaintiffs' second and sixth causes of action similarly alleged that the defendants

have violated their rights under the IDEA and the Rehabilitation Act.    However, the second and

sixth causes of action have been framed as § 1983 claims.    42 U.S.C. § 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom
> or usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States . . . to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.    To state a claim under Section 1983, a plaintiff must allege (1) the

deprivation of any rights, privileges, or immunities secured by the Constitution or the laws of the

United States, and (2) that the deprivation was "committed by a person acting under the color of

state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).    "While Section 1983

contemplates suits to enforce individual rights under federal statutes . . ., it 'does not provide an

avenue for relief every time a state actor violates a federal law.'" *E. Ramapo Cent. Sch. Dist. v.*

*DeLorenzo,* No. 13-CV-1613 CS, 2013 WL 5508392, at *5 (S.D.N.Y. Oct. 3, 2013) (citing *City*

*of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119–20 (2005) (internal citations

omitted).    Indeed, "'[t]o sustain a [Section] 1983 action, the plaintiff must demonstrate that the

federal statute creates an individually enforceable right in the class of beneficiaries to which he

belongs.'" *Id*. (citing *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120, 125 S. Ct.

1453, 1457, 161 L. Ed. 2d 316 (2005)).    In this case, the school plaintiffs' have failed to

demonstrate that Congress created a right benefitting schools that is enforceable through either

the IDEA, the Rehabilitation Act or Section 1983.    *Id.* at *6 (finding that school failed to

demonstrate that Congress created a benefit under the IDEA that was enforceable through

section 1983).

The defendants also point out that the claims are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   Indeed, the Supreme Court has made clear for over a century "that the Constitution does not provide for federal jurisdiction over suits against non-consenting states."   *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (citations omitted).   In addition, this immunity extends "to entities considered arms of the state, such as state agencies." *Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007) (internal citations omitted); *see also Smith v. The New York State Dep't of Correctional Servs.*, No. 08 Civ. 7090(GBD)(RLE), 2010 WL 1192057, at *2 (S.D.N.Y. Mar. 1. 2010) (the Eleventh Amendment bars suits against a state agency regardless of the nature of the relief sought, including suits in equity).

However, there are limited exceptions to state sovereign immunity.   *See Tiraco v. New York State Bd. of Elections*, No., 12-CV-2273 (KAM)(MDG), 2013 WL 4046257, at * 5 (E.D.N.Y. Aug. 7, 2013).   For example, "Congress by statute may abrogate state immunity and subject the states to suit." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).   The plaintiffs correctly note that "the IDEA contains an express abrogation of sovereign immunity as to suits brought pursuant to it." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 137 F. Supp. 2d 83, 87 (N.D.N.Y. 2001), aff'd, 290 F.3d 476 (2d Cir. 2002) (citing 20 U.S.C. § 1404(a)).   The same holds true for the Rehabilitation Act. *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 92d Cir. 2001) ("It is undisputed that, in enacting § 504, Congress unequivocally expressed its 'intent to condition acceptance of federal funds on a state's waiver of its Eleventh

20

Amendment immunity.'").   Nevertheless, the waiver of sovereign immunity set forth in the statutes extends only to claims brought pursuant to the IDEA and the Rehabilitation Act, not claims brought pursuant to § 1983.   *See e.g., Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 480 (2d Cir. 2002) ("§ 1403(a)'s waiver of sovereign immunity extends only to claims brought pursuant to the IDEA, not claims brought pursuant to § 1983 or some other statute.").   Accordingly, the cannot argue a waiver of sovereign immunity with respect to the Section 1983 claims.

The plaintiffs also rely on a second exception to the Eleventh Amendment, commonly known as the *Ex parte Young* doctrine, which permits a plaintiff to seek prospective injunctive relief against a state official because such action by the official is not considered an action of the state.   *See Cincotta v. New York City Human Res. Admin.*, No. 00 CIV. 9064 (JGK), 2001 WL 897176, at *8 (S.D.N.Y. Aug. 9, 2001).   "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997). In their opposition, the plaintiffs focus on the type of relief they are seeking.   They correctly argue, in this regard, that their prayer for injunctive relief, namely, that the state officials be restrained from enforcing the corrective action plans and audit findings, is a form of prospective relief.   *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636, 122 S. Ct. 1753, 1755, 152 L. Ed. 2d 871 (2002).   However, their *Ex parte Young* argument completely disregards the fact that they have not adequately alleged an ongoing violation of federal law.   For this reason, the undersigned recommends that the plaintiffs' § 1983 claims also

be dismissed.

###### E.    Article 78 Claims

The plaintiffs' fourth and seventh causes of action seek to overturn the NYSED's SEQA audit findings pursuant to C.P.L.R. § 7803.   Given the Court's determination regarding the federal claims asserted by the plaintiffs, the undersigned sees no reason to exercise supplemental jurisdiction over a purely state procedural remedy.   *See Cartagena v. City of New York*, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) (citing *Birmingham v. Ogden*, 70 F. Supp.2 d 353, 372 (S.D.N.Y.1999) ("federal courts are loath to exercise jurisdiction over Article 78 claims"); *Lucchese v. Carboni*, 22 F. Supp. 2d 256, 258 (S.D.N.Y.1998) ("Article 78 proceedings were designed for the state courts, and are best suited to adjudication there."); *Herrmann v. Brooklyn Law School,* 432 F. Supp. 236, 240 (E.D.N.Y.1976) ("[T]his special proceeding designed to accommodate to the state court system is best suited to that system.")).   Accordingly, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over the Article 78 claims, and thus, dismiss the case in its entirety.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.   Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the 14-day period for filing objections.   Failure to file objections within this period waives the right to appeal the District Court's Order.   *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60

22

(2d Cir. 1996).

Dated: Central Islip, New York
       March 4, 2019

                                    _____/s/_____
                                    ARLENE R. LINDSAY
                                    United States Magistrate Judge