```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
ASCENT: A SCHOOL FOR INDIVIDUALS WITH
AUTISM; NASSAU SUFFOLK SERVICES FOR THE
AUTISTIC; D.H. and T.H., individually and
as next friends on behalf of their child
B.H.;T.D. and A.D., individually and as
next friends on behalf of their child A.D.;
P.M., individually and as next friend on
behalf of her child R.M.; M.C. and K.C.,
individually and as next friends on behalf
of their child A.B.; M.H and F.H.,
individually and as next friends on behalf
of their child A.H.; and M.C. and M.C.,
individually and as next friends on behalf
of their child T.C.,

                    Plaintiffs,
                                             MEMORANDUM & ORDER
          -against-                          17-CV-6866(JS)(ARL)

NEW YORK STATE EDUCATION DEPARTMENT;
MARYELLEN ELIA, in her official capacity
as New York State Commissioner of Education;
and KAREN NELSEN and JULIA NAGLE, in their
official capacities as Regional Associates
of the New York State Education Department,

                    Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:     Frederick J. Berman, Esq.
                   Jacob Seth Claveloux, Esq.
                   Matthew J. Delforte, Esq.
                   Shebitz Berman & Delforte, P.C.
                   1350 Avenue of the Americas, 4th Floor
                   New York, New York 10019

For Defendants:    Dorothy O. Nese, Esq.
                   Office of the N.Y. State Attorney General
                   200 Old Country Road, Suite 460
                   Mineola, New York 11501
```

SEYBERT, District Judge:

Plaintiffs filed this action on November 22, 2017, and Defendants moved to dismiss on March 9, 2018. On October 17, 2018, the motion was referred to Magistrate Judge Arlene R. Lindsay for a Report and Recommendation on whether it should be granted, and the case was then reassigned to the undersigned.

Before the Court are: (1) Defendants' motion to dismiss, (Mot., D.E. 11); (2) Judge Lindsay's Report and Recommendation dated March 4, 2019 (the "R&R") recommending dismissal of this action, (R&R, D.E. 24), and (3) Plaintiffs' objections to the R&R ("Objections"), (Obj., D.E. 26). For the reasons set forth below, Plaintiffs' Objections are OVERRULED and Judge Lindsay's R&R is ADOPTED to the extent indicated herein, and Defendants' motion is GRANTED.

## BACKGROUND

The Court assumes familiarity with the procedural history of this matter, as well as with the Complaint, (Compl., D.E. 1), the parties' briefs in connection with the motion to dismiss, (Defs. Br., D.E. 11-1; Pls. Opp., D.E. 16; Defs. Reply, D.E. 18), the R&R, the Objections, and Defendants' opposition to the Objections, (Defs. Opp., D.E. 28).

## DISCUSSION

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of

the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted). A party may serve and file specific, written objections to a magistrate judge's report and recommendation within fourteen days of being served with the recommended disposition. See FED. R. CIV. P. 72(b)(2). Upon receiving any timely objections to the magistrate judge's recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The Court conducts a de novo review of any portion of the report and recommendation to which a party objects. Walker, 216 F. Supp. 2d at 292.

I. The School Plaintiffs' IDEA and Section 1983 Claims are Dismissed with Prejudice

Plaintiffs object to Judge Lindsay's finding that the School Plaintiffs have no private right of action under the IDEA.[1] (Obj. at 6-11; R&R at 14-16.)

---

[1] The Objections construe the R&R's recommendation on this point as an issue of "standing." (Obj. at 6.) To clarify, the R&R concludes that the School Plaintiffs have alleged an injury in fact for Article III standing purposes. (See R&R at 13-14.) The Article III standing inquiry, however, is separate from whether "a plaintiff [ ] ha[s] a cause of action under the applicable statute." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 358-59 (2d Cir. 2016).

The Court agrees with the R&R's conclusion that the School Plaintiffs may not bring a cause of action under the IDEA. See Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 755, 197 L. Ed. 2d 46 (2017) ("[T]he only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE [(free and appropriate public education)]."). In County of Westchester v. New York, 286 F.3d 150 (2d Cir. 2002), the Second Circuit explained:

> Since Congress expressly provided a private right of action in favor of certain groups, specifically, any party aggrieved by particular findings or a decision rendered under subsection 1415, see 20 U.S.C. § 1415(i)(2)(A), but did not expressly provide a private right of action in favor of a county, educational agency or any other entity seeking to challenge the lack of an interagency agreement required by § 1412(12), we find it extremely unlikely that Congress intended to do so. . . .
>
> The fact that Congress delegated regulatory and enforcement authority to the Secretary of Education also weighs heavily against implying a private right of action. . . . [G]ranting broad powers to a federal agency "would be inconsistent with [implying] a private right of action because private litigation tends to transfer regulatory interpretation and discretion from the agency to the courts."

Id. at 152-53 (citations omitted) (second alteration in original).

Plaintiffs' argument that County of Westchester is limited to its facts is unconvincing. Congress explicitly provided a right of action in favor of a party "aggrieved by particular

4

findings or a decision rendered under subsection 1415."[2]  Id. at 152.  Congress did not explicitly provide a private right of action in favor of providers, like the School Plaintiffs, to enforce other provisions of the IDEA.  Therefore, the Court "find[s] it extremely unlikely that Congress intended to do so."  See Cty. of Westchester, 286 F.3d at 152; see also, e.g., E. Ramapo Cent. Sch. Dist., 2013 WL 5508392, at *6 (compiling cases) ("[C]ourts agree[ ] that the IDEA provides rights only to certain groups--parents and students--and not to school districts.").  Plaintiffs' reliance on a district court case predating County of Westchester, the

---

[2] The Southern District of New York summarized the relevant subsections of the IDEA as follows:

> 20 U.S.C. § 1415(i)(2)(A) provides a "[r]ight to bring civil action" for "[a]ny party aggrieved by the findings and decision made under subsection (f) or (k) . . . ." 20 U.S.C. § 1415(i)(2)(A).  Subsection (f) of Section 1415 allows for an "[i]mpartial due process hearing" regarding matters raised in a complaint filed either pursuant to Section 1415(b)(6)(A) ("any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child") or Section 1415(k)(3)(A) (hearing regarding placement in alternative education setting when child violates student code of conduct).  Section (k) generally sets out procedures for placement of and services for students who violate the student code of conduct.

E. Ramapo Cent. Sch. Dist. v. DeLorenzo, No. 13-CV-1613 CS, 2013 WL 5508392, at *5 n.5 (S.D.N.Y. Oct. 3, 2013).

5

reasoning of which runs counter to that of County of Westchester, is misplaced. (Obj. at 7-8); compare Cty. of Westchester, 286 F.3d at 153 ("We refuse to imply a private cause of action in the absence of clear congressional intent and in the face of an express allocation of enforcement authority to (1) those aggrieved in section 1415 proceedings and (2) the Secretary of Education."), with Brooklyn Sch. for Special Children v. Crew, No. 96-CV-5014, 1997 WL 539775, at *9 (S.D.N.Y. Aug. 28, 1997) ("The fact that disabled children and their parents are entitled to bring suits does not disentitle providers from suing . . . ."). Accordingly, Plaintiffs' Objections on this point (Obj. at 6-11) are OVERRULED, the relevant portion of the R&R (R&R at 13-16) is ADOPTED, and the School Plaintiffs' first and fifth claims are DISMISSED WITH PREJUDICE.

The School Plaintiffs may not circumvent the lack of an implied IDEA cause of action by bringing the claim pursuant to Section 1983. See Gonzaga Univ. v. Doe, 536 U.S. 273, 286, 122 S. Ct. 2268, 2277, 153 L. Ed. 2d 309 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."). Because the IDEA does not provide the School Plaintiffs with individually enforceable rights, the School Plaintiffs' Section 1983 claims--premised on Defendants' alleged violation of

6

those purported rights--fail. See E. Ramapo Cent. Sch. Dist., 2013 WL 5508392, at *6 (citations omitted) ("[T]o the extent that the District's argument suggests that the standard for determining whether a right is enforceable under Section 1983 differs from, or is less stringent than, the test for whether a statute itself creates a private right of action, . . . the Supreme Court has explicitly rejected this assertion"). Accordingly, the Objections on this point (Obj. at 17) are OVERRULED, the relevant portion of the R&R (R&R at 19) is ADOPTED, and the School Plaintiffs' second and sixth claims are DISMISSED WITH PREJUDICE.

The Court echoes the R&R's conclusion that this matter is well suited for resolution through an Article 78 proceeding. (R&R at 15-16.) "An Article 78 proceeding is the proper vehicle to determine whether the law has been lawfully applied, or the validity of certain government acts pursuant to a valid statute, rather than a vehicle for challenging the validity of a statute itself." Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., No. 10-CV-8002, 2011 WL 3427138, at *14 (S.D.N.Y. Aug. 5, 2011)), aff'd, 678 F.3d 184 (2d Cir. 2012). Plaintiffs do not challenge the validity of any laws or regulations, but instead, challenge whether Defendants are properly applying them. (See, e.g., Compl. ¶¶ 171-72, 193-95, 224-25, 239-43, 255, 259-66.) To the extent they seek to the challenge Defendants' policies as inconsistent with federal law, they may do so in an Article 78 proceeding. See

7

Kircher v. Perales, 112 A.D.2d 431, 432, 492 N.Y.S.2d 91, 93 (1985) ("Although respondents' interpretation of the statute would normally be entitled to great weight, we decline to accept that interpretation in this case because to do so would render the statute inconsistent with Federal law and thus would be violative of the Supremacy Clause.").

II. The Parent Plaintiffs' Claims are Dismissed Without Prejudice

The Court lacks subject matter jurisdiction over the Parent Plaintiffs' claims under IDEA (claims one and five), section 504 of the Rehabilitation Act (claim three), and Section 1983 (claims two and six), because the Parent Plaintiffs lack standing to assert the claims. "'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" (R&R at 8 (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).) "'[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" (R&R at 8 (quoting Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (alteration in original), aff'd, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010)).)

Article III of the U.S. Constitution restricts the jurisdiction of federal courts to "'actual cases or controversies.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (quoting Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849 (1997)). Standing to sue, "a doctrine rooted in the traditional understanding of a case or controversy," "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 473, 102 S. Ct. 752, 759, 70 L. Ed. 2d 700 (1982); Warth v. Seldin, 422 U.S. 490, 498–99, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975)).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)).

With respect to their alleged injury in fact, the Parent Plaintiffs are not challenging a local educational agency's failure to issue an appropriate individualized education plan ("IEP") or otherwise provide a free and appropriate public

education ("FAPE"): "Plaintiff Parents are perfectly happy with their children's present IEPs, which require full ABA-based instruction, with no related services." (Obj. at 12.) Instead, they allege that Defendants' enforcement of its policies and audit findings ("Policies") against the School Plaintiffs would harm the Parent Plaintiffs by denying their children a "FAPE on a systemic basis."[3] (Obj. at 12.) According to the Parent Plaintiffs, that harm could occur in one of two ways.

First, if the School Plaintiffs decide not to implement the required changes, then the School Plaintiffs may lose public funding or be subjected to other sanctions. (Compl. ¶ 196.) If the School Plaintiffs lose public funding, they would close, and the Parent Plaintiffs' children would have to change schools. (Compl. ¶¶ 197, 199.) If the children cannot be placed in suitable schools, they will be denied a FAPE. (Compl. ¶¶ 198-200.)

---

[3] To the extent the Parent Plaintiffs would argue that Defendants' anticipated denial of a FAPE to their children is both the alleged harm and the challenged action, and that Defendants' enforcement of the Policies against the School Plaintiffs is not the challenged action, their claims would not be ripe for adjudication for the same reasons discussed in this section. See Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013) (observing that the constitutional requirement of an injury in fact overlaps with whether an issue is ripe); see also Somoza v. N.Y. City Dep't of Educ., 538 F.3d 106, 115 (2d Cir. 2008) (concluding "that plaintiff's claims were ripe at the time she discovered the alleged denials of a FAPE").

10

This feared harm is overly speculative. Defendants might not revoke the School Plaintiffs' approved-provider status and funding eligibility, in which case the School Plaintiffs would remain open. Or, if the School Plaintiffs prevail in their Article 78 proceeding, they would not lose funding eligibility or be forced to close.[4] Or, even if the School Plaintiffs close, the Parent Plaintiffs' children could be placed in schools capable of implementing their IEPs. See M.O. v. N.Y. City Dep't of Educ., 793 F.3d 236, 244-45 (2d Cir. 2015) (allowing challenges to proposed placement schools when they are based on more than speculation); see also A.S. v. Bd. of Educ. Shenendehowa Cent. Sch. Dist., No. 17-CV-0501, 2019 WL 719833, at *10 (N.D.N.Y. Feb. 20, 2019) (citations omitted) ("'[P]arents are not entitled to choose an educational methodology under the IDEA.' . . . [T]he [State Review Officer] did not err in finding that [the student] had no right to an exclusively ABA-based IEP [ ]."). In each of these scenarios, the Parent Plaintiffs' children would not have been denied a FAPE.

---

[4] Additionally, though they cite no authority in support of the assertion, Defendants provide that the School Plaintiffs would be allowed an opportunity for an administrative hearing before NYSED revoked their program approval. (Defs. Reply at 5 ("In the first place, NYSED does not 'revoke program approval' and 'cut off funding' instantaneously. In the absence of the instant lawsuit and in the normal course of events, if NYSED were to revoke program approval for the schools, Plaintiffs would be accorded due process rights through an administrative hearing, if they requested one.").)

Second, if the School Plaintiffs implement the changes--which is unlikely at this stage given that they intend to pursue an Article 78 proceeding (see Obj. at 19)--a "few" students, but not the Parent Plaintiffs' children, would be provided with related services during the school day (Compl. ¶¶ 157, 162, 201-02). The students who would receive related services could cause disruptions because aides could show up late, be absent, or have tolerance levels different from those of the School Plaintiffs' instructors. (Compl. ¶¶ 85-86, 93-94, 208-09, 213, 217.) These students' inappropriate behaviors or other alterations to these students' schedules could disrupt the Parent Plaintiffs' children. (Compl. ¶¶ 86, 94, 204-22.) These disruptions or the enforcement of the other Policies at issue could result in the denial of a FAPE. (See Compl. ¶ 274, 307-08.)

As with the first scenario, this potential harm is too hypothetical. Initially, it appears that the School Plaintiffs will pursue an Article 78 proceeding rather than immediately comply with the required changes. (See Obj. at 19.) In any event, the related services providers could appreciate the delicacy of the students' schedules and arrive on time, or secure coverage if they anticipate being late or absent. Or, any disruptions caused by related services providers could be insignificant or infrequent. Or, the School Plaintiffs could determine a way implement the changes without significantly disrupting the students. In each

case, the Parent Plaintiffs' children could still receive a FAPE--"an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" T.K. v. N.Y. City Dep't of Educ., 810 F.3d 869, 875 (2d Cir. 2016) (alteration in original) (quoting M.O., 793 F.3d at 239); A.S., 2019 WL 719833, at *10; see also J.R. v. N.Y. City Dep't of Educ., 748 F. App'x 382, 386 (2d Cir. 2018) (citation omitted) (emphasis in original) ("The IDEA requires an appropriate education, not one that provides 'everything that might be thought desirable by loving parents.'").

Further, at this stage, the Court cannot resolve whether exhaustion of administrative remedies would be required and whether Defendants would be proper parties to an action challenging the denial of a FAPE. In the first scenario, a FAPE may be denied at another school for reasons unrelated to Defendants' enforcement of the Policies; exhaustion may be necessary and Defendants may not be proper parties. (See R&R at 16-19.) In the second scenario, a FAPE may be denied because of Defendants' enforcement of the Policies; exhaustion may be futile and Defendants may be proper parties. Heldman v. Sobol, 962 F.2d 148, 158 (2d Cir. 1992). This uncertainty underscores that the Parent Plaintiffs lack standing to challenge Defendants' enforcement of the Policies.

As the above discussion illustrates, the Parent Plaintiffs' feared injury from Defendants' enforcement of the

13

Policies against the School Plaintiffs is not actual or imminent, but conjectural and hypothetical, and the Parent Plaintiffs do not have Article III standing.[5] Accordingly, the Parent Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE.

Considering this disposition and the reasoning set forth above, the Court does not reach the R&R's and the Objections' discussions of Eleventh Amendment immunity (R&R at 20-22; Obj. at 18-19), exhaustion, or whether Defendants--as opposed to a local educational agency--are proper parties to this action (R&R at 16-19; Obj. at 11-16).

III. The School Plaintiffs' Article 78 Claims are Dismissed Without Prejudice

Because the Court has dismissed all federal claims asserted by Plaintiffs, the Court ADOPTS the R&R's recommendation that the Court decline to exercise supplemental jurisdiction over

---

[5] The result does not change merely because the Parent Plaintiffs assert their claims under the Declaratory Judgment Act. Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth., 415 F. App'x 264, 266-67 (2d Cir. 2011). The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). A "case of actual controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007) (citations omitted). Because the Parent Plaintiffs lack Article III standing, they lack "a case of actual controversy" required by the Declaratory Judgment Act.

14

the Article 78 claims. (R&R at 22; see Obj. at 19 ("Insofar as this recommendation is predicated on the Court's adopting the Report's recommendations that all federal law claims asserted in the Complaint be dismissed, . . . Plaintiffs do not object to this recommendation.").) Accordingly, the School Plaintiffs' Article 78 claims (the fourth and seventh causes of action) are DISMISSED WITHOUT PREJUDICE.

CONCLUSION

For the foregoing reasons, Plaintiffs' Objections (D.E. 26) are OVERRULED and Judge Lindsay's R&R (D.E. 24) is ADOPTED to the extent indicated herein, and Defendants' motion to dismiss (D.E. 11) is GRANTED. The School Plaintiffs' IDEA and Section 1983 claims (their first, second, fifth, and sixth causes of action) are DISMISSED WITH PREJUDICE and their Article 78 claims (their fourth and seventh causes of action) are DISMISSED WITHOUT PREJUDICE to refiling in state court. The Parent Plaintiffs' IDEA, Rehabilitation Act, and Section 1983 claims (their first, second, third, fifth, and sixth causes of action) are DISMISSED WITHOUT PREJUDICE.

The Clerk of the Court is directed enter judgment accordingly and mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 31, 2019
Central Islip, New York